IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

IN RE: JAMES L. NICHOLS AND       Case No. 4:17-bk-15992J
WENDY J. NICHOLS      (Chapter 13)

**Debtors.**

**MEMORANDUM OPINION AND ORDER
OVERRULING OBJECTION TO CLAIM**

Before the Court is the *Trustee's Objection to Allowance of Claim* (the "**Objection to Claim**") (Doc. No. 85) filed by the Chapter 13 Trustee, Jack W. Gooding (the "**Trustee**"). In the Objection to Claim, the Trustee argues that creditor Southern Collections has abandoned its claim and therefore its claim should be disallowed. For the reasons stated below, the Objection to Claim is overruled.

### I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The following shall constitute the Court's findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014.

### II. Facts

James and Wendy Nichols (the "**Debtors**") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on November 6, 2017.[1] Southern Collections timely filed a proof of claim in the case on November 15, 2017, asserting an unsecured deficiency claim related to an apartment lease in the amount of $12,071.00. The proof of claim listed P.O. Box 25006, Little Rock, Arkansas 72221, as the address for notices and payments to Southern Collections. The

---
[1] The Court takes judicial notice of the docket sheet and claims register in this case.

claim was filed by Roberta Cranston, Legal Manager for Southern Collections. Ms. Cranston checked the box on the proof of claim form indicating she was "the creditor's attorney or authorized agent." (Ex. 1, at 3). In response to the provision asking for "[o]ther names the creditor used with the debtor," Ms. Cranston indicated, "The Pointe at Conway and Stephen Cobb Attorney." (Ex. 1, at 1).

More than four years later, in June of 2022, the Trustee began sending disbursements on Southern Collections' claim. The Trustee considered the claim allowed at the time. No objection to the claim had been filed. Mr. Jonathan Hayes, a case manager for the Trustee, testified that the "allowed amount" of the claim was $12,071.00. (Tr. at 8–9). He further explained that the Trustee's office would only make payments on allowed claims, and that the Trustee's office considered the claim a "valid claim." (Tr. at 16). In addition, the Trustee previously filed his "Summary Notice of Claims Filed," which included Southern Collections' claim as an allowed unsecured claim.[2]

The first check mailed to Southern Collections by the Trustee's office was dated June 1, 2022. It was made payable to "Southern Collection Systems" and was mailed to the address listed for Southern Collections in its proof of claim, P.O. Box 25006, Little Rock, Arkansas 72221. (Ex. 2). The check was later returned to the Trustee with a handwritten notation at the bottom stating, "Southern Collections is no longer in business. I cannot take this check." (Ex. 2). No name is signed to this handwritten notation. The check was returned in an envelope bearing attorney Stephen Cobb's return address.

Mr. Hayes explained that when he received the returned check in June of 2022, he recalled that the Trustee's office had also received a returned check from Southern Collections in

---

[2] The Court takes judicial notice of the Summary Notice of Claims Filed (Doc. No. 75), filed in this case by the Trustee on July 3, 2018.

connection with another bankruptcy case. He contacted the original creditor in the other bankruptcy case, and that creditor informed him Southern Collections had "changed names" and was now First Collection Services. (Tr. at 12–13). The same creditor representative also gave Mr. Hayes new contact information for First Collection Services, including the following addresses: "10925 Otter Creek E. Blvd., Mabelvale, AR 72103" and "P.O. Box 3564, Little Rock, AR 72203." (Ex. 6). Based on this information, Mr. Hayes testified he "updated the payee name for the creditor" in the Nichols' case and "re-mailed the check to the new address." (Tr. at 13).

The Trustee's office issued a check dated August 1, 2022, on Southern Collections' claim. The check was made payable to "First Collection Service" and mailed to one of the new addresses given to Mr. Hayes, P.O. Box 3564, Little Rock, Arkansas 72203. (Ex. 4). This check was returned to the Trustee with a handwritten notation at the bottom stating, "Account no longer in our system. We cannot post payment. Return to Nichols account." This notation was signed by "Roberta C.," and a phone number was listed under her name. (Ex. 4).

Another check dated September 1, 2022, was mailed by the Trustee's office. This check was made payable to "Southern Collections" and mailed to the other address given to Mr. Hayes, 10925 Otter Creek East Blvd., Mabelvale, Arkansas 72103. (Ex. 5). This check was also returned with a handwritten note from "Roberta C." stating, "Account no longer in system refund to Nichols." (Ex. 5). The same phone number appeared under her name as with the prior check.

Although not introduced into evidence, Mr. Hayes testified that other checks were also mailed by the Trustee's office on Southern Collections' claim from June through September 2022. When the August and September checks were returned, Mr. Hayes contacted Roberta Cranston directly. Ms. Cranston explained in both telephone and email communications with

3

Mr. Hayes that Southern Collections and First Collection Services merged accounts, but bankruptcy accounts were not merged and were not "put into the system" at First Collection Services. (Ex. 7). She explained the bankruptcy accounts were closed and stated, "we no longer have access to them." (Ex. 7).

No transfer of claim has been filed in this case for Southern Collections' claim, nor has Southern Collections withdrawn its proof of claim.

The Trustee argues although Southern Collections originally filed a valid proof of claim, it has abandoned its claim and the claim should be disallowed pursuant to Section 502 of the Bankruptcy Code.

### III. Discussion

Under the Bankruptcy Code, a proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). If an objection is filed, the court must determine the amount of the claim as of the petition date and must allow the claim unless one of nine enumerated exceptions found in Section 502(b) applies. 11 U.S.C. § 502(b); *see also Sears v. Sears (In re Sears)*, 863 F.3d 973, 978 (8th Cir. 2017). "Section 502(b) sets forth the sole grounds for objecting to a claim and directs the court to allow the claim unless one of the exceptions applies." *Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147, 150 (B.A.P. 8th Cir. 2004); *see also In re Muller*, 479 B.R. 508, 512 (Bankr. W.D. Ark. 2012).

If properly executed and filed, a proof of claim constitutes "prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). "The burden of proof then shifts to the objector to establish that the claim fits within one of the exceptions set forth in Section 502(b) of the Bankruptcy Code." *In re Dove-Nation*, 318 B.R. at 152 (first citing 11 U.S.C. § 502(b)(1)–(9); then citing *Kimmons v. Innovative Software Designs, Inc. (In re*

4

*Innovative Software Designs, Inc.)*, 253 B.R. 40, 44 (B.A.P. 8th Cir. 2000); and then citing *Consumers Realty & Dev. Co. v. Goetze (In re Consumers Realty & Dev. Co.)*, 238 B.R. 418, 422–23 (B.A.P. 8th Cir. 1999)). Even if the proof of claim is not entitled to prima facie validity, it is still "some evidence" of the claim, and the objector "must come forward with 'some evidence to meet, overcome, or at least equalize the statements on the proof of claim.'" *In re Muller*, 479 B.R. at 514 (quoting *In re Cluff*, 313 B.R. 323, 340 (Bankr. D. Utah 2004), *aff'd sub nom. Cluff v. eCast Settlement*, No. 04-CV-978, 2006 WL 2820005 (D. Utah Sept. 29, 2006)). In either case, if the objector presents evidence supporting its objection to claim, "the ultimate burden of persuasion" shifts to the claimant to prove its claim. *In re Dove-Nation*, 318 B.R. at 152.

The Trustee argues Southern Collections' claim should be disallowed because Southern Collections has abandoned the claim. As Section 502(b) sets forth the *sole* grounds for objecting to a claim, abandonment of a claim is not a proper basis for disallowing an otherwise allowed claim.[3] The Trustee did not cite to any of the enumerated exceptions to the allowance of a claim in his objection or at the hearing. Indeed, Mr. Hayes admitted that the Trustee's office considered the claim to be an allowed claim when the Trustee began making disbursements on the claim. Prior to the Trustee's objection, no objection to the claim had been filed, and the claim was listed as an allowed unsecured claim in the Trustee's summary of claims filed. The Trustee failed to meet his burden of proving the claim should be disallowed under Section 502(b).

---

[3] Section 502(b) provides for the disallowance of claims that are unenforceable against the debtor and property of the debtor, claims that are for unmatured interest, certain taxes, services of an insider, certain unmatured domestic support obligations, damages resulting from termination of a lease, damages resulting from termination of an employment contract, employment taxes, and untimely filed claims. 11 U.S.C. § 502(b)(1)–(9).

5

At the hearing, the Court inquired as to why the funds should not be treated as unclaimed funds under Section 347(a) of the Bankruptcy Code. Mr. Hayes testified the funds were not treated as unclaimed because the Trustee's office believed the funds should go to other unsecured creditors in the case. Counsel for the Trustee responded in closing that if the funds were deposited into the Court's registry, she feared the funds would sit indefinitely.

Section 347(a) provides that "[n]inety days after the final distribution . . . the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court." 11 U.S.C. § 347(a). Funds are often deposited under this section when trustee disbursements are returned in the mail as undeliverable, and the trustee cannot locate the claimant. *See In re McDowell*, 578 B.R. 786 (Bankr. M.D. Tenn. 2017); *In re Cunningham*, No. 313-02021, 2017 WL 4417579 (Bankr. M.D. Tenn. Oct. 3, 2017); *In re Laroque*, No. 15-50567, 2020 WL 8813678 (Bankr. M.D.N.C. Dec. 22, 2020); *In re Bair*, No. 15-61403, 2019 WL 6045481 (Bankr. N.D. Ohio Nov. 14, 2019). *But see In re Lee*, 189 B.R. 692 (Bankr. M.D. Tenn. 1995). In this situation, courts have found Section 347(a) to be "straightforward." *E.g., In re McDowell*, 578 B.R. at 791. As the *McDowell* court stated:

> Section 347(a) is as straightforward as it gets. If a creditor does not negotiate a check, and that check remains uncashed 90 days after the final distribution, the funds represented by that check are deemed unclaimed funds and are to be deposited into the Court's registry in trust for the creditor. Period. The funds belong to the claimant holding an allowed claim.

*Id.*

Less often, the trustee locates the claimant, but the claimant cannot or will not negotiate the check. In some cases, courts have found the funds should be treated as unclaimed funds under Section 347(a). For example, in *In re Sischo*, No. 10-08600, 2014 WL 3908627 (Bankr. W.D. Mich. July 30, 2014), BAC Home Loan Servicing ("**BAC**") timely filed a claim in the

6

case, but when the trustee sent a disbursement check to BAC, BAC returned the check with a letter stating, "this loan has been service released to: Ocwen Loan Servicing, LLC." *Id.* at *1. The debtors thereafter filed an objection to BAC's claim. The court overruled the debtors' objection in part because there was "nothing objectionable" about BACs claim and neither the debtors nor trustee identified grounds for the objection under Section 502(b). *Id.* at *2. In addition, the court found that while BAC had provided "some explanation of its reason for not cashing the check," BAC was the entity the trustee was required to pay pursuant to the confirmed plan and the filed proof of claim, and therefore, since this entity returned the check uncashed it was "unclaimed" and should be treated pursuant to Section 347(a). *Id.*; *see also In re Gettig Techs., Inc.*, No. 05-06044, 2016 WL 836992 (Bankr. M.D. Pa. Mar. 3, 2016) (funds returned by trustee who was unwilling to reopen the closed case to administer funds; court held the funds should be treated as unclaimed funds under Section 347(a)).

Based on the specific facts before the Court in this case, the Court finds the reasoning of the *Sischo* court persuasive. In the case at hand, the Trustee attempted to make disbursements on Southern Collections' claim by sending at least three checks to three different addresses. All three checks were returned with handwritten notations essentially stating that the recipient could not process the payment. Ms. Cranston later explained that Southern Collections and First Collection Services merged accounts, and the bankruptcy accounts of Southern Collections were not "put into the system" at First Collection Services. (Ex. 7). Although the bankruptcy accounts were not "put into the system" at First Collection Services, it does not follow that Southern Collections or some successor in interest no longer has an interest in the bankruptcy accounts, including the bankruptcy claim at issue.

7

The Court's ruling is bolstered by the fact that Southern Collections never withdrew its claim, nor has a transfer of claim been filed. *See* FED. R. BANKR. P. 3006 & 3001(e). If Southern Collections desired to "abandon" the claim, it could have easily done so by filing a withdrawal of the claim pursuant to Rule 3006 of the Federal Rules of Bankruptcy Procedure.

In addition, the Court questions whether Ms. Cranston (or "Roberta C.") had authority to make the statements made. While she presumably had authority to file the proof of claim in 2017, it is unclear whether she had authority to disclaim an interest in the claim on behalf of Southern Collections, or a proper successor in interest, in 2022. If she did have authority on behalf of Southern Collections to disclaim any interest in the claim, it is unclear why she did not instead withdraw the claim. Importantly, this is not a case where the Trustee received reliable information that the claim has been paid in full. To the contrary, these accounts may still exist and could be available to a proper claimant. If further action is not taken in the case by Southern Collections or its successor, treating the funds as unclaimed pursuant to Section 347(a) will give the creditor or its successor an opportunity to recover the funds.

The Court appreciates the Trustee's efforts in this case. However, Southern Collections remains the entity the Trustee is required to pay pursuant to the documents currently filed in the case. This entity has not negotiated the checks. If further action is not taken in this case and the checks remain unpaid ninety days after the Trustee's final distribution, the Trustee should treat the funds as unclaimed under Section 347(a) of the Bankruptcy Code.

### IV. Conclusion

For the reasons stated herein, the Trustee's Objection to Claim is OVERRULED. As Section 502(b) sets forth the *sole* grounds for objecting to a claim, abandonment of a claim is not a proper basis for disallowing an otherwise allowed claim. If further action is not taken in this

case and the disbursements on Southern Collections' claim remain unpaid ninety days following the Trustee's final distribution, the Trustee should treat the funds as unclaimed pursuant to Section 347(a) of the Bankruptcy Code.

**IT IS SO ORDERED.**

_____
Phyllis M. Jones
United States Bankruptcy Judge
Dated: 09/27/2023